B J Fadem, Esquire, Bar #118819
LAW OFFICES OF B J FADEM, APC
255 N. Market Street, Suite 210
San Jose, California 95110
408-280-1220 (voice)
408-292-4100 (fax)
fademlaw@sbcglobal.net

FILED

2007 NOV 29  P 2: 47

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST OF CA. S.J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### San Jose Division

DESPINA ASVESTA,
22 Platonos Street
Nikaia, 18454
Piraeus, Greece

      Petitioner

   v.

GEORGE PETROUTSAS
300 Plum Street, SPC 69
Capitola, California 95010

      Respondent

_____/

Case No.   C 07 05535 JF

SUPPLEMENTAL
MEMORANDUM

Hearing Date:   11/30/07
Time:              9:00 a.m.
Courtroom:       3
Honorable J. Fogel

## RESPONDENT'S PRE-HEARING MEMORANDUM

This memorandum is submitted on behalf of respondent, George

Petroutsas.

This action arises from the petitioner's abduction from California to

Greece in November 2005 of the child of the parties (the "Child"), in plain contravention

of respondent's rights of custody. However, the case has been dressed up to make it

appear that exactly the opposite is true. That is, this Court is now being asked to turn a blind eye to – and even to legitimate -- the petitioner's abduction of the Child to Greece, to condemn the subsequent removal of the Child from Greece by the custodial father and thereby to force the Child out of California and back to Greece.

This is an extreme case in which the courts of California and Greece have followed diametrically opposed paths. The respondent asked the Greek courts to order the return of his abducted son to California in compliance with orders issued by the Superior Court, Santa Cruz County, California (the "Superior Court") that directed petitioner to return the Child to California. However the Greek courts refused to enforce or respect the Superior Court orders, dismissed all of respondent's applications, gave immediate temporary custody to the petitioner, dismissed the respondent's application under the Hague Convention on the Civil Aspects of International Child Abduction on grounds that make little or no sense, in violation of the provisions of the Hague Convention and that even the petitioner cannot now defend on the merits, and awarded permanent custody to the petitioner.

Ultimately in July 2007, in full compliance with the California orders the respondent took the Child back home to California. Petitioner now demands that this court send him back to Greece. Her only argument is that this court is obliged to rubberstamp all foreign orders in Hague Convention cases -- even when they disregard United States law, flout United States court rulings, contravene international treaties,

violate plain common sense and fairness, and are issued by courts that the U.S. State Department has officially labeled as noncompliant, biased and unjust.

In April 2007 the U.S. State Department issued a <u>Report on Compliance with the Hague Convention on the Civil Aspects of International Child Abduction</u>. http://travel.state.gov/pdf/child_abduction_Compliance_Report.pdf. **[Relevant Portions attached hereto as Exhibit 1 for the Court's Convenience]** The report was delivered to Congress as is required annually under Public Law 105-277, Section 2803.

Based upon this very case among others, the State Department cited Greece as one of the worst enforcers of Hague Convention rights. Using the restrained language of diplomacy the State Department stated that, "For the rating period to be covered by this report, Greece continues to demonstrate a pattern of noncompliance with the Convention. The Department sees patterns of noncompliance in both Greek judicial performance and law enforcement performance. Despite efforts by the Greek Central Authority to educate judges, Greek courts typically treated Convention cases as custody matters, basing cases on the best interests of the child or other criteria outside the boundaries of the Convention. Article 13(b) is used excessively to refuse returns. Moreover, the courts exhibited a bias in favor of Greek parents."

## Statement of Facts

The Child was born in California on May 21, 2005. He is a United States citizen. His mother is the petitioner Despina Asvesta ("Despina"), a citizen of Greece and a permanent resident of the United States and his father is respondent George Petroutsas ("George"), a citizen of the United States and Greece.

Despina moved from her home in Greece to live with George at his home in California in February 2002. They were married in Watsonville, Santa Cruz, California on March 10, 2002. Initially they lived with George's family in Watsonville and then they moved into their own house in Capitola in January 2003. The Child lived there with his parents continuously from his birth until Despina took him for a visit to Greece on November 5, 2005. George provided Despina with a written travel authorization that stated:

> "To Whom It May Concern:
> I hereby consent to Despina Asvesta Petroutsas to
> travel with our son ... between the following dates
> November 8, 2005 – December 8, 2005
> Sincerely
> G. Petroutsas"

However, on November 17, 2005 Despina told George that she intended to keep the Child in Greece. George was outraged. He immediately sought the help of the Superior Court which issued an order on November 30, 2005 giving temporary physical

Respondent's Supplemental
Memorandum
C-07-05535 JF

- 4 -

custody, care, and control of the Child to George. The order also directed: "return child to father."

Two days later, on December 1, 2005, Despina went to court in Athens, Greece seeking a custody order in her favor. At that stage the Child had been in Greece for only three weeks. Despina admitted to the Greek court that she had come to Greece for only a short visit but she said that she had discovered that her husband had been unfaithful to her and so had decided that the marriage was over and she had to stay in Greece. (In an affidavit submitted on or about December 1, 2005, Despina stated, "Early in November 2005 I decided to come with our child for a small period of time to Greece, in order to be able to calm down...").

The Greek court then issued a provisional order granting temporary custody to Despina and directing that the residence of the child should be at Despina's parents' home in Greece.

The California and Greek courts continued thereafter to follow divergent paths. On December 27, 2005 the Superior Court issued an order pursuant to Articles 3 and 15 of the Hague Convention provisionally finding that:

- "The child ... was habitually resident in the United States, and specifically in the State of California in and before November 8, 2005."

Respondent's Supplemental
Memorandum
C-07-05535 JF

- 5 -

- "Mr. George Petroutsas has rights to custody as defined by California law."
- "Therefore, the removal of the child by the mother to Greece was wrongful, as the Court understands Article 3 of the Hague Convention."

On January 4, 2006 the Superior Court issued an order that:

- "Despina … is ordered to return the minor child … to the United States and specifically she is ordered to return the child to the petitioner, George Petroutsas."

On January 25, 2006, the Superior Court issued an order which stated:

- "This proceeding was heard on January 25, 2006….Petitioner, his attorney and the Respondent's attorney were all present."
- The Court finds that, Santa Cruz County, California in the United States of America is the habitual residence of The Child Petroutsas."
- "The Court finds that, Santa Cruz County, California in the United States of America is the proper jurisdiction to hear this matter."
- "The Court finds that, Despina Petroutsas has not returned to the United states of America with the child of the parties after representing to George Petrousas that she would return from

Greece on December 1, 2005. As such Despina Petrousas has
removed [the Child] from his place of habitual residence."

- "The Court finds that, Despina Petrousas has been represented in
  these proceedings by attorney George C. Kasolas since January 3,
  2006."

- The Court makes a Permanent Modifiable order of Sole Legal
  Custody and Sole Physical Custody of the minor child ... to George
  Petrousas."

- "The Court orders Despina Petroutsas, or any agency with the proper
  authority to return the minor child ... to George Petrousas
  immediately."

On March 10, 2006 another hearing was held in the Superior Court.
Again, Despina was represented by counsel. The Court ruled that:

- "All previous orders remain in effect, including the Order for the
  immediate return of the minor child to his place of residence in Santa
  Cruz County, California. That Order is enforceable now and has been
  enforceable since its first issuance. No further Court hearings or Court
  orders are necessary for enforcement."

Subsequent hearings were held in the Superior Court in which the Court
sought to have mediation in Greece between the parties while continuously restating the

fact that the Court was not yielding jurisdiction to Greece and that its prior orders remained in full force and effect and were directly enforceable.

George sought the assistance of the Greek courts but he was rebuffed at every step. He filed an application for the return of the Child under the Hague Convention and initiated an action for such return in the Piraeus One-Member Court of First Instance (the "Piraeus Court"). On March 24, 2006 that court dismissed George's case. The dismissal was based on three grounds, each of which is unsupported by facts and insupportable on the law.

The first ground was that George had given his written consent to the move to Greece. This was based on the temporary travel authorization – but since that document was nothing more than a consent to travel for a limited time period the court sought to bolster the argument by adopting Despina's allegation that George had once suggested that she stay in Greece. Specifically the Piraeus Court ruled that "George Petroutsas has consented … giving for this purpose to the respondent a related written permission and suggesting to her to stay in Greece together with the minor and he would communicate with him when he visited Greece."

The fact that George did not consent to Despina keeping in Greece is amply shown by his extremely prompt actions in court in California and then in Greece in which he protested her wrongful retention. Indeed, nothing in the record demonstrates that he

consented to the Child's permanent retention in Greece, which is an absolute prerequisite for a finding of consent. Baxter v. Baxter, 423 F.3d 363 (3rd Cir. 2005).

The second ground of the Greek decision was that "George Petroutsas was not virtually exercising the right of custody of the person of the minor at the time of his move, since, as previously reported, he was indifferent to his family obligations, he was not engaged in the minor's care and was indifferent to his psychosomatic development." The Piraeus court was apparently referring to his wife's allegations that he cheated on her or his actions in demanding that she bring the child home to California or she would face criminal charges. In fact, as will be discussed below, the defense of non-exercise of custodial rights requires proof of "acts that constitute clear and unequivocal abandonment of the child." Friedrich v. Friedrich, 78 F.3d 1060, 1066 (6th Cir. 1996). The Piraeus court's claims in this regard are woefully without merit and in plain violation of the terms of the Hague Convention.

The third and final ground for the refusal to return the child was that "there is a severe danger that the minor's return to the USA to expose him to mental tribulation, since he will be deprived of his mother's presence..." This holding also violates the Hague Convention. It is firmly established that a grave risk of harm sufficient to justify a refusal to return a child can only exist if it is proven that the return would put the child in imminent danger prior to the resolution of a custody dispute, e.g. by returning the child to a war zone or famine area; or, in cases where there is serious abuse or neglect or extraordinary emotional dependence and the court in the place of habitual residence is

unable or unwilling to give the child adequate protection. Friedrich v. Friedrich, 78 F.3d 1060 (6th Cir. 1996).

Courts the world over have uniformly held that the abducting parent's own abduction of a child followed by his or her refusal to return to the habitual residence cannot provide the basis for a finding that the return order would create a grave risk of harm to the child. Such bootstrapping would undercut the entire Convention and should not be tolerated. Friedrich v. Friedrich, supra., Thompson v. Thompson, [1994] 3 R.C.S. 551, 119 D.L.R.4th 253 (Canada); In re A., 1 F.L.R. 365, 372 (Eng. C.A. 1988).

Having lost his Hague Convention application on the weakest of grounds, George continued to seek the assistance of the Greek courts. He asked them to enforce the orders of the California courts, since those orders were issued within days of the time that the Child had left California. Specifically, he requested that they give their equivalent of full faith and credit, res judicata and comity effect to the California custody orders in his favor.

However, on April 23, 2007 the Single Member First Instance Court of Athens ruled against George on all counts. It cited a multiplicity of reasons for refusing to enforce the California orders but the fundamental basis seems to have been the obligation that it owed to a child located in its territory to act in accordance with its view of the child's best interests, rather than a foreign court's opinion on that issue. Accordingly it

chose to disregard the California orders in their entirety and granted exclusive custody of the child to the mother with some visitation in Greece to the father.

On June 22, 2007, while having visitation with the Child, and acting under the authority of the California orders which had granted him sole custody and had ordered the return of the child to California, George took the Child from Greece and returned him to his home in California where he has since been located.

By letter to the respondent dated August 15, 2007 **[Attached Hereto as Exhibit 2]**, the Department of State stated as follows:

> "Dear Mr. Petrousas:
>
> I am sure that you are happy to have [the Child] back in the United States with you. As your son is now in the United States, we have closed the case in our office regarding his retention in Greece."

### POINT I

### THE HAGUE CONVENTION IS INTENDED
### TO REMEDY THE VERY MISCONDUCT THAT
### PETITIONER HAS COMMITTED

The Hague Convention is designed to provide a prompt and effective remedy for the very misconduct that the petitioner has committed. Parents are prohibited from unilaterally removing or retaining a child away from the other custodial parent and away from the child's home overseas, as petitioner did when she took the Child on vacation to Greece and then refused to return him.

The Congress -- in ratifying the Hague Convention and implementing it through the International Child Abduction Remedies and Enforcement Act, ("ICARA", 42 U.S.C 11601 *et seq.*) – has decreed that (a) "The international abduction or wrongful retention of children is harmful to their well-being" (ICARA Sec. 1(1)); (b) "Persons should not be permitted to obtain custody of children by virtue of their wrongful removal or retention" (ICARA Sec. 1(2); and (c) "Children who are wrongfully removed or retained within the meaning of the Convention are to be promptly returned unless one of the narrow exceptions set forth in the Convention applies." (ICARA Sec. 1(4).

In <u>Mozes v. Mozes</u>, 239 F.3d 1067 at 1079 (9th Cir. 2001) the Court stated that, "The function of a court applying the Convention is . . . to determine . . . whether one parent is seeking unilaterally to alter the status quo with regard to the primary locus

Respondent's Supplemental                    - 12 -
Memorandum
C-07-05535 JF

of the child's life." In <u>Gitter v. Gitter</u>, 396 F.3d 124 at 129-130 (2d Cir. 2005), the Second

Circuit explained that, because the Hague Convention aims to deter family members from

removing children to jurisdictions more favorable to their custody claims and to deprive

their actions of any practical or juridical consequences, it places at the head of its

objectives the restoration of the status quo by requiring the prompt return of children

wrongfully removed to or retained in any Contracting State.


The Hague Convention is "intended to restore the pre-abduction status

quo and to deter parents from crossing borders in search of a more sympathetic court.

Pub. Notice 957, 51 Fed.Reg. 10494, 10505 (1986); Friedrich I, 983 F.2d at 1400;

Rydder, 49 F.3d at 372; Feder, 63 F.3d at 221; Wanninger v. Wanninger, 850 F.Supp.

78, 80 (D. Mass. 1994)." <u>Friedrich</u>, supra.


Such goals require that the Child remain in California, that the petitioner's

choice of a forum in Greece should not be rewarded, and that the issues of custody and

relocation should be determined by the courts of California.

## POINT II

## RESPONDENT DID NOT
## COMMIT A WRONGFUL TAKING

When the respondent removed the Child from Greece in July he did so under the express authority of the California courts. He had sole custody of the Child under the law of California, which was the habitual residence of the Child.

Article 3 of the Hague Convention provides that the removal or retention of a child is "wrongful" where:

> "a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the Child was habitually resident immediately before the removal or retention; and
>
> b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention."

Thus, in order to prevail on a claim under the Hague Convention a petitioner must show that (1) the child was habitually resident in one State and has been removed to or retained in a different State; (2) the removal or retention was in breach of the petitioner's custody rights under the law of the State of habitual residence; and (3) the petitioner was exercising those rights at the time of the removal or retention. The petitioner must establish these requirements by a preponderance of the evidence. 42 U.S.C. § 11603(e)(1)(A).

## A. **Petitioner did not have Rights of Custody over the Child in June 2007**

In order to prevail the petitioner must prove that she had rights of custody over the Child in June 2007 under the law of the Child's habitual residence.

Until the first ruling of the Superior Court on November 30, 2005, the parties had equal rights of custody over the Child under California law. However, the Superior Court removed petitioner's rights of custody by its orders dated November 30, 2005, January 25, 2006 and March 10, 2006.

Although petitioner secured custody orders in her favor from the courts of Greece -- the place to which she abducted the child -- that country was not the child's habitual residence. While petitioner contends that the Greek ruling in her favor establish that Greece did become the child's habitual residence immediately after she improperly retained him there, that ruling turns the Hague Convention on its head. If the Greek courts reward child abduction by declaring that an abduction effectively creates a new habitual residence, the courts of this country have every obligation to refuse to accept such a breach of the obligations of the Hague Convention.

Therefore, the petitioner had no rights of custody over the Child in June 2007 when the respondent took the Child back home to California. For this reason, the petition is fatally defective and it must be dismissed.

## B. The Child's Habitual Residence in June 2007 was in California, not Greece

It is "black letter" Hague Convention law that a parent cannot change a

child's habitual residence by wrongfully removing from a habitual residence or

wrongfully retaining a child away from a habitual residence. Diorinou v. Mezitis, 237

F.3d 133, 142 (2d. Cir. 2001); Miller v. Miller, 240 F.3d 392, 400 (4th Cir. 2001);

Friedrich v. Friedrich, supra, 983 F.2d at 1402; Kijowska v. Haines, 463 F.3d 583 (7th

Cir. 2006).

In Kijowska v. Haines, supra, Judge Posner explained that to allow a

parent to create a new 'habitual residence' by the wrongful removal and sequestering of a

child "would invite abduction." He stated that,

> "Suppose the day after Maya was born, Haines had
> surreptitiously removed her from her bassinet,
> flown with her to Argentina, established his
> domicile there, claimed Argentina as Maya's
> habitual residence, and invoked Argentinian
> custody law to define his rights over her. That
> would be as inappropriate a basis for locating
> habitual residence in Argentina as if Haines had
> outright kidnapped Maya when she and her mother
> returned to the United States in May of 2005, and
> was now arguing that nevertheless Maya has
> acquired a new habitual residence, in the United
> States, by virtue of having lived here since then."

The pending case depends entirely on the petitioner's assertion that her

abduction of the child in November 2005 should be rewarded. There can be no issue as to

the fact that the child's habitual residence until November 2005 was California. The

evidence will establish that that was the place where the child had lived for his entire life, and the place where his parents had lived for all of their married life and where they were settled.

The respondent will prove at the hearing that he had rights of custody over the Child in November 2005; that he did not consent to the Child being retained in Greece in November 2005 or at any subsequent time; and that he was exercising rights of custody over his Child at all times. Accordingly the habitual residence of the Child in November 2005 was California and it did not change at any time thereafter.

This constitutes a second reason why the petition is fatally defective.

## C. Respondent Always Exercised Rights of Custody

The defense of non-exercise of custodial rights requires proof of "acts that constitute clear and unequivocal abandonment of the child." Friedrich v. Friedrich, 78 F.3d 1060, 1066 (6th Cir. 1996); Sealed Appellant v Sealed Appellee, 394 F.3d 338 (5th Cir. 2004).

Thus in Sealed Appellant, the Fifth Circuit ruled as follows:

> "If a person has valid custody rights to a child under the law of the country of the child's habitual residence, that person cannot fail to "exercise" those custody rights under the Hague Convention short of acts that constitute clear and unequivocal abandonment of the child. Once it determines that

> the parent exercised custody rights in any manner,
> the court should stop--completely avoiding the
> question whether the parent exercised the custody
> rights well or badly. These matters go to the merits
> of the custody dispute and are, therefore, beyond the
> subject matter jurisdiction of federal courts."

The evidence already on file of George's relentless quest to see his son are conclusive evidence of the fact that he never abandoned his Child. Indeed, the finding in Greece that he did not exercise his rights of custody is so outrageous that it speaks loudly and eloquently to the bias of the Greek courts.

## POINT III

### THIS COURT IS NOT REQUIRED
### TO BLINDLY APPLY THE ERRONEOUS
### RULINGS OF A FOREIGN COURT

Petitioner's case rests on nothing more than her demand that this Court must defer to, rubberstamp and blindly apply the orders of the Greek courts. As a matter of law, petitioner is wrong.

Section 4 of ICARA provides that, "Full faith and credit shall be accorded by the courts of the States and the courts of the United States to the judgment of any other such court ordering or denying the return of a child, pursuant to the Convention, in an action brought under this chapter." 42 U.S.C. § 11603(g). It is firmly established that that

section does not apply to orders issued by courts in foreign countries. Diorinou v. Mezitis, 237 F.3d 133 (2d Cir. 2001).

Whether or not a U.S. court applies a foreign order is simply a matter of whether the U.S. court chooses to accord comity to such foreign order. De Silva v. Pitts, 481 F.3d 1279 (10th Cir. 2007). That is a matter which depends entirely on the appropriateness of the foreign order and the degree of respect that is appropriate in all of the circumstances. Diorinou v. Mezitis, supra.

In the case of decisions on Hague Convention cases, the appellate courts are permitted to review the exercise of the district court's discretion de novo. In reviewing the issue of whether a U.S. court should have granted comity, "appellate courts have not explicitly articulated the standard of review, but we believe the standard is de novo review, see Overseas Inns, 911 F.2d at 1149 n.4 ("[W]hether to grant comity [to a foreign tribunal's adjudication of an issue] appears to be a mixed question of law and fact . . . ."), just as it would be on review of a judgment of a domestic court based on res judicata or collateral estoppel, see Monarch Funding Corp., 192 F.3d at 303 (collateral estoppel decisions reviewed de novo)." Diorinou v. Mezitis, supra.

A court should not unthinkingly apply a foreign ruling under the principle of comity. Instead a district court must make a "careful consideration of the determinations" of the foreign court to which a party asks the court to defer. Thus in Diorinou the Second Circuit ruled that:

"Although deference as a matter of comity often entails consideration of the fairness of a foreign adjudicating system, see Hilton, 159 U.S. at 202 (inquiry whether foreign judgment obtained "under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries"); Restatement (Third) of Foreign Relations § 482, cmt. b (1987), a case-specific inquiry is sometimes appropriate, see Hilton, 159 U.S. at 202 (inquiry concerning "fraud in procuring the [foreign] judgment or any other special reason why the comity of this nation should not allow its full effect") (emphasis added); Victrix Steamship, 825 F.2d at 713 (comity prevails if foreign judgment "does not prejudice the rights of United States citizens or violate domestic public policy"); Gordon and Breach Science Publishers, 905 F. Supp. at 179 ("[I]t is primarily principles of fairness and reasonableness that should guide domestic courts in their preclusion determinations.); Restatement (Third) of Foreign Relations § 482 cmt. b (1987) ("[A] particular case may disclose such defects as to make the particular judgment not entitled to recognition."). Although we have no reason to question the fairness of the Greek system of jurisprudence, we think that, in this particular case, the complicated sequence of litigation and the force of the parties' contentions warrant our careful consideration of the determinations in Greece to which Diorinou asks us to defer."

Superficially there are great similarities between the facts of Diorinou and those in the pending case. Both cases concerned children who were habitually resident in the United States, were taken by their mothers to Greece and were then brought back by their fathers to the United States.

However, in Diorinou there had been a gap of five years from the time the children were taken to Greece to the time they were brought back to the U.S. During that

time the children had spent their formative years. By contrast in the pending case the gap was only 1 ½ years.

Furthermore the rulings against the father on the Hague Convention issue were rendered not only by the court of first instance but also by both an intermediate appellate court and ultimately by the Supreme Court of Greece. By contrast, in the present case no appeal has been heard and this Court is being asked to defer to the ruling of a court of first instance.

Additionally, while in <u>Diorinou</u> the courts relied on similar arguments to those relied on by the Piraeus Court, the evidence in support of those arguments in <u>Diorinou</u> was far stronger than that in the case at bar, as will be elicited in great detail by respondent at the hearing.

Finally – and of great significance -- the State Department has now issued in strong terms a report that denounces Greece's failure to comply with the terms of the Hague Convention and that strongly criticizes the Greek courts for making erroneous and biased decisions against Americans in Hague Convention cases. The position of the State Department at the time of <u>Diorinou</u> in 2001 was entirely different. The State Department did not identify any problems with Greece in its compliance reports for 2001 or 2002. **[See** http://travel.state.gov/family/abduction/hague_issues/hague_issues_577.html and http://travel.state.gov/family/abduction/hague_issues/hague_issues_563.html**; and**

**Exhibit 1 attached hereto]**. To the contrary, State then urged the Second Circuit to afford respect to the Greek courts. Diorinou, supra.

That official position has now changed completely. Because of this very case as well as a host of others, the State Department reported to Congress in April 2007 – Report on Compliance with the Hague Convention on the Civil Aspects of International Child Abduction. [ http://travel.state.gov/pdf/child_abduction_Compliance_Report.pdf; **and Exhibit 1]** -- that:

- Greece "continues to demonstrate a pattern of noncompliance with the Convention";

- Greece "follows "patterns of noncompliance in both Greek judicial performance and law enforcement performance,"

- "Greek courts typically treated Convention cases as custody matters, basing cases on the best interests of the child or other criteria outside the boundaries of the Convention";

- In Greece "Article 13(b) is used excessively to refuse returns"; and that

- "Moreover, the courts exhibited a bias in favor of Greek parents."

A fair reading of the rulings by the Greek courts in the pending matter illustrates all too well the improprieties that the State Department has reported. The decisions adopt the affidavits of the petitioner and her supporters almost verbatim and simply present her arguments as the findings of the courts.

"[T]he 'whole structure of the Convention' depend[s] on the institutions of the abducted-to state generally deferring to the forum of the child's home state." Blondin v. Dubois, 189 F.3d 240, 248 (2d Cir. 1999). Here the Greek courts have not made any deference to the courts of California and have expressly refused to enforce or even seriously consider the Superior Court orders. Instead, the petitioner now demands that the Greek court order should be implemented by this Court even though it would serve to undermine the fundamental principles of the Convention.

## CONCLUSION

The bottom line in this case is that an American child was kept in Greece in violation of his rights and those of his father and in violation of the repeated orders of the California courts by a mother who chose to ignore U.S. law and by a foreign court whose specious arguments enabled her to keep her child in Greece in violation of the applicable law.

This court must now decide whether it is compelled to legitimate and reward the mother's abduction and the Greek court's cynical support of her misconduct or whether as respondent contends it should follow the California state court rulings, the position of the U.S. State Department and the clear mandate of the Hague Convention and the International Child Abduction Remedies Act.

Moreover, Father is *not* the flight risk – Mother is. Her own Response to Father's Petition indicates she intends to only stay in this country "*at least*" until

Respondent's Supplemental                          - 23 -
Memorandum
C-07-05535 JF

November 30th. It's clear, if this court grants Mother anything less than supervised visitation pending a full evidentiary hearing with regard to her Petition – there will be no hearing; Mother will abduct the child again to Greece. There is nothing to stop Mother from obtaining another Greek passport for the child.

Attached hereto as **Exhibit 3** are numerous letters supporting Father and his guarantee that he will not be leaving this jurisdiction with the child pending final resolution of this case.

Respectfully submitted

B J Fadem, Esq.
Jeremy D. Morley, Esq.
Of counsel to B J Fadem, Esq.