# Report on Compliance with the Hague Convention on the Civil Aspects of INTERNATIONAL CHILD ABDUCTION

April 2007





**DEPARTMENT OF STATE**

ASSISTANT SECRETARY FOR CONSULAR AFFAIRS

WASHINGTON, DC

Dear Reader:

I am pleased to present the 2007 Compliance Report for the 1980 Hague Convention on the Civil Aspects of International Child Abduction. The Convention is a valuable tool to help the United States work through the complicated issues raised by international parental child abduction.

The most important part of my job is the protection of American citizens abroad. This is particularly true for our youngest and most vulnerable citizens — our children. That is why the Convention is of particular significance to me. International parental child abduction can create lasting scars in a child and in a family that time is slow to heal.

Compliance with the Convention can be an ongoing challenge, as this report details. We at the Department pledge to continue to work with each of our Convention partners to quickly resolve abduction cases and improve understanding and implementation of the Convention. I refer you to our website *www.travel.state.gov* for additional information on our efforts to deter international parental child abduction.

Sincerely,

Maura Harty
Assistant Secretary for Consular Affairs

# INTRODUCTION

## THE 2007 COMPLIANCE REPORT: ITS PURPOSE

Each year, the Department of State's Office of Children's Issues (CI) is required under Public Law (PL) 105-277, Section 2803 to submit to Congress a report on country compliance with the 1980 Hague Convention on the Civil Aspects of International Parental Child Abduction (Convention).

For the first time, this year the report includes information about international parental child abduction (IPCA) cases where children have been brought into the United States (incoming cases). Additionally, the report contains comments about notable issues that the United States has found to have an impact on compliance with the Convention, including undertakings, the UN Convention on the Rights of the Child, mediation, and Mexico's *amparo* appeal system. The compliance categories have also been altered this year to more precisely respond to the requirements of the above referenced law, and make more transparent the standards for placing countries in compliance categories.

## **65.8% returns of abducted children came from U.S. Convention partners.**

This report covers the period from October 1, 2005 through September 30, 2006. The information provided herein is that which was available to the United States Central Authority (USCA) within these dates. In some instances in which updates were available and relevant to this report, the report includes developments subsequent to September 30, 2006.

## ABDUCTION STATISTICS

### CASE NUMBER STATISTICS

- In Fiscal Year (FY) 2006, the USCA assisted left-behind parents in the United States to file 289 Convention applications involving 393 children.

- In FY 2006, the United States provided assistance in 346 Convention applications incoming to the United States, which involved 522 children.

### RETURN STATISTICS

- In FY 2006, the Department assisted in the return to the United States of 260 children abducted to or wrongfully retained in other countries. Of these children, 171 children returned from countries that are Convention partners with the United States, accounting for 65.8 percent of the returns in FY 2006.

- In FY 2006, 183 children abducted to or wrongfully retained in the United States were returned to their country of origin under the Convention.

- Convention partners who accounted for the greatest number of returns of abducted children to the United States in FY 2006:

| CONVENTION COUNTRY | NUMBER OF CHILDREN RETURNED IN FY 2006 |
|---|---|
| MEXICO | 38 |
| UNITED KINGDOM | 26 |
| CANADA | 14 |
| AUSTRALIA | 14 |
| IRELAND | 13 |



# COUNTRY COMPLIANCE PLACEMENTS



## COUNTRIES NOT COMPLIANT

HONDURAS

## COUNTRIES DEMONSTRATING PATTERNS OF NONCOMPLIANCE

| | |
|---|---|
| **BRAZIL** | **GREECE** |
| **CHILE** | **MEXICO** |
| **COLOMBIA** | **POLAND** |
| **GERMANY** | |

## METHODOLOGY FOR THE COMPLIANCE CATEGORY PLACEMENTS

This report identifies the Department's concerns about those countries in which implementation of the Convention is incomplete or in which a particular country's executive, judicial, or law enforcement authorities do not properly apply the Convention's requirements. The report breaks down such countries into two categories, "Countries Not Compliant with the Convention," and "Countries Demonstrating Patterns of Noncompliance with the Convention." Both of the categories derive directly from statutory language in PL 105-277, Section 2803.

The Department largely based its analysis of country compliance with the Convention on the standards and practices outlined in the Permanent Bureau of the Hague Conference on Private International Law's *Guide to Good Practice*. Using the Guide, the Department conducted analyses of the following three compliance areas to reach its findings for this report:

1) Central Authority performance;
2) Judicial performance; and
3) Law Enforcement performance.

"Central Authority performance" involves the speed of processing applications; the existence of and adherence to procedures for assisting left-behind parents in obtaining knowledgeable, affordable legal assistance; the availability of judicial education or resource programs; and responsiveness to inquiries by the USCA and left-behind parents.

"Judicial performance" comprises the timeliness of a petition under the Convention, timeliness of subsequent appeals, correct application of the Convention, and the efforts by courts to enforce decisions for return or access.

"Law Enforcement performance" includes the success in promptly locating abducted children, and the prompt enforcement of court orders issued pursuant to applications under the Convention by administrative or law enforcement authorities.

## NOT COMPLIANT

The designation of "Countries Not Compliant with the Convention," derives from Section 2803 of PL 105-277, which requires a list of countries that have failed to comply with any of their Convention obligations. The Department considers that countries listed as "Not Compliant" are failing in all three performance areas for the reporting period.

## PATTERNS OF NONCOMPLIANCE

The designation of "Countries Demonstrating Patterns of Noncompliance," derives from Section 2803 (a)(3) of PL 105-77, which requires a list of countries that have "demonstrated a pattern of noncompliance" with the Convention. The Department considers countries that have a systemic failure to comply with the Convention in one of the three performance areas to be in this compliance category.

# COUNTRY NARRATIVES:
# PATTERNS OF NONCOMPLIANCE

## GREECE

| | |
|---|---|
| DATE RATIFIED THE CONVENTION | **3-19-1993** |
| DATE OF ENTRY INTO FORCE WITH U.S. | **6-1-1993** |
| PATTERN OF NONCOMPLIANCE | **LAW ENFORCEMENT PERFORMANCE; JUDICIAL PERFORMANCE** |

For the rating period to be covered by this report, Greece continues to demonstrate a pattern of noncompliance with the Convention. The Department sees patterns of noncompliance in both Greek judicial performance and law enforcement performance. Despite efforts by the Greek Central Authority to educate judges, Greek courts typically treated Convention cases as custody matters, basing cases on the best interests of the child or other criteria outside the boundaries of the Convention. Article 13(b) is used excessively to refuse returns. Moreover, the courts exhibited a bias in favor of Greek parents. There were also excessive delays between the court hearings and notification of the court's decision. All of these delays further violated Article 11 of the Convention requiring that Convention cases be handled expeditiously.

The Department was encouraged that in June 2006, a five-judge Greek Court of Appeals overturned a trial court ruling that had ignored clear provisions of the Convention. The decision for return received significant publicity in Greece; however, as of the end of the reporting period, the decision for return still had not been enforced. As a whole, it appears that enforcement of court orders remains a challenge for the Greek police (although the Department notes that the return order in the case mentioned above was enforced in February 2007, after the end of the reporting period).

