Stephen J. Cullen, Esquire
*pro hac vice*
Kelly A. Powers, Esquire
*pro hac vice*
Miles & Stockbridge P.C.
One West Pennsylvania Avenue
Suite 900
Towson, Maryland 21204
(410) 821-6565
(410) 385-3709 (fax)
scullen@milesstockbridge.com
kpowers@milesstockbridge.com

Renee C. Day, Esquire, Bar # 221252
Hoover & Betchel, L.L.P.
The Garden Alameda
1570 The Alameda, Suite 101
San Jose, California 95126
(408) 947-7600
(408) 947-7603 (fax)
renee@hoover-betchel.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
### San Jose Division

DESPINA ASVESTA,

      Petitioner,

v.                                                             Case No.: C-07-05535 JF

GEORGE PETROUTSAS,

      Respondent.

_____/

## PETITIONER'S EVIDENTIARY HEARING MEMORANDUM

Petitioner, Despina Asvesta ("Ms. Asvesta"), by and through her undersigned attorneys, hereby files this Petitioner's Evidentiary Hearing Memorandum in support of her Verified Petition for Return of Child to Petitioner, the merits of which are scheduled to be determined at the evidentiary hearing before this Honorable Court on December 17, 2007. Petitioner's Evidentiary Hearing Memorandum is also filed in Response to Respondent's Pre-Hearing Memorandum filed on November 29, 2007 prior to the Show Cause Hearing in this matter held on November 30, 2007.

## I. FACTUAL BACKGROUND AND PRIOR LITIGATION

On May 21, 2005, the parties' only child, A.G.P., was born in Santa Cruz, California. The child is both a United States and Greek citizen, and speaks both English and Greek fluently. On November 9, 2005, with the written consent of the Respondent, Ms. Asvesta and the minor child left for Greece to visit family and friends initially until December 8, 2005. On November 29, 2005, the Respondent called Ms. Asvesta in Greece to advise her that he had reported her to American authorities for allegedly abducting the parties' son. The Respondent further threatened Ms. Asvesta with arrest, and that she would not see the child again. On November 30, 2005, while Ms. Asvesta was still in Greece by agreement of the parties, the Respondent instituted divorce and custody proceedings against her in the Superior Court of California, County of Santa Cruz, fraudulently stating the parties' date of separation as November 18, 2005, and obtaining an ex parte temporary custody order from the California court. While still in Greece, on December 5, 2005, Ms. Asvesta therefore filed for divorce in the Athens Multimember Court of First Instance against the Respondent, requesting custody of the child. On December 9, 2005, following a telephone subpoena of the Respondent, an injunction was granted by the Athens Multimember Court of First Instance, temporarily assigning custody of the child to Ms. Asvesta, and establishing the child's temporary place of residence at Ms. Asvesta's Greek home. A hearing on Ms. Asvesta's petition was scheduled for January 9, 2006, but was later postponed.

On February 20, 2006, Respondent filed a Hague Convention action in the Greek courts, alleging that Ms. Asvesta had wrongfully removed the child from the United States of America to Greece. The Respondent's Hague Convention filing stayed the Greek custody proceedings pending the resolution of Respondent's Hague Convention petition. On March 24, 2006, following a hearing where both parties had notice and opportunity to be heard and after their full

participation with the representation of counsel, the Respondent having voluntarily appeared, the Greek court, an impartial tribunal against which no showing of prejudice exists, issued an order finding that Ms. Asvesta's move to Greece with the child was not wrongful. A copy of Order number 5042/2006 dismissing Respondent's Hague Convention petition is attached hereto and incorporated herein as Petitioner's **Exhibit A**.

On June 16, 2006, the Respondent then submitted to the jurisdiction of the Greek courts and filed a petition in the Greek custody case seeking visitation with the child in Greece. On April 23, 2007 the Single Member First Instance Court of Athens held a hearing to consider Ms. Asvesta's custody petition, filed on December 5, 2005, and the Respondent's custody petition, filed on June 16, 2006. The Greek court awarded temporary exclusive custody to Ms. Asvesta, with a specific supervised visitation schedule for the Respondent. A copy of Order number 3157/2007 awarding temporary exclusive custody to Ms. Asvesta is attached hereto and incorporated herein as Petitioner's **Exhibit B**.

On November 26, 2007, the Athens One Member Court of First Instance in Order number 1733/26-11-2007 awarded sole custody of the child to Ms. Asvesta, and ordered that the Respondent will have visitation with the child (despite his prior abduction of the child) at specific dates and times, only in the presence of the mother, at her home, which is also the child's home, located at 22 PLATONOS STR, NIKAIA, ATTICA, GREECE. This latest order establishes the custody determination ordered in the Greek Court's prior Order number 3157/2007 as a final determination. A copy of the Affidavit of Greek Attorney Regarding Recent Greek Court Decision is attached hereto and incorporated herein as Petitioner's **Exhibit C**.

During the same period of time in which the Greek custody proceedings were ongoing, the Respondent improperly continued to pursue his custody request in California, where he was

awarded sole custody of the child. However, the Greek court specifically and properly declined to recognize the California custody orders in its Order number 1337/2007, which was affirmed after the Respondent appealed the Greek trial court's decision.

On June 28, 2007, in Order number 686/2007, the Piraeus Court of Appeals affirmed the trial court's decision declining to recognize the California custody orders. Copies of said Orders properly declining to recognize California custody orders are attached hereto and incorporated herein collectively as Petitioner's **Exhibit D**.

In June of 2007, Ms. Asvesta was provided alarming information by the Hellenic Police Authorities that there was a signal from INTERPOL[1] that the Respondent was planning the abduction of A.G.P. with the assistance of an international gang of kidnappers. Ms. Asvesta was unable to obtain a copy of the INTERPOL notice until August 1, 2007.

Then, during the Respondent's July 22, 2007 supervised visitation with the minor child in Greece, he abducted the child some time between the hours of 2:45 p.m. and 5:45 p.m. during the period the child was supposed to have been taking a nap. The visitation was supervised by the child's maternal and paternal grandmothers. During the child's nap, the Respondent, child and paternal grandmother were in a bedroom of the maternal grandmother's home. Upon realizing that the child's nap had lasted longer than anticipated, the maternal grandmother entered the bedroom to find only the paternal grandmother still in the room. The Respondent and the child were gone. Upon information and belief, the Respondent absconded with the child through the

---

[1] INTERPOL is the world's largest international police organization, with 186 member countries. Created in 1923, it facilitates cross-border police co-operation, and supports and assists all organizations, authorities and services whose mission is to prevent or combat international crime. INTERPOL, *About INTERPOL*, http://www.interpol.int/public/icpo/default.asp (accessed December 9, 2007).

bedroom window. If the Respondent had left the home in any other way, the maternal grandmother would have seen or heard him leave.

At the time of the wrongful removal, Ms. Asvesta was only aware of one passport issued for the child, a United States passport that was in her sole possession. On November 30, 2007, following a show cause hearing in this Court, she learned for the first time that there is a Greek passport issued for the minor child on November 8, 2005 from the Greek consulate in San Francisco, and a second United States passport issued for the minor child on August 21, 2007. Copies of said passports are attached hereto and incorporated herein collectively as Petitioner's **Exhibit E**. It is unclear at this time how the Greek passport and second United States passport could have been obtained without Ms. Asvesta's knowledge or consent, which she did not give. Of particular concern is a letter from the United States Embassy in Athens to Ms. Asvesta on August 7, 2007 in response to Ms. Asvesta's inquiry regarding additional passports issued for the child. The letter states that although a passport for the child had been authorized in March 2006 upon a request by the Respondent to re-issue a lost passport for the child, it was never actually issued. The letter explains that the passport was not issued due to the embassy determining that the United States custody order the Respondent submitted with the passport application was not recognized by the Greek courts and that the Respondent did not have actual physical custody of the child. A copy of said letter is attached hereto and incorporated herein as Petitioner's **Exhibit F**.

It is also unclear how the Respondent was able to leave Greece and enter the United States with the child. A Canadian stamp in the child's Greek passport establishes that the child entered Canada on July 22, 2007, the day he was removed from Greece. However, none of the

child's passports contain a stamp evidencing departure from Greece on July 22, 2007 or entry into the United States as, upon information and belief, is required by immigration law.

Immediately upon realizing that the Respondent had absconded with the child, Ms. Asvesta reported the abduction to the Greek police and filed charges against the Respondent. A copy of said police report is attached hereto and incorporated herein as Petitioner's **Exhibit G**. A criminal prosecution in Greece has been instituted against the Respondent for the abduction of a minor. Upon information and belief, there are also firearms charges pending against the Respondent in Greece for firearms violations associated with the abduction. A copy of the Affidavit of Greek Attorney Regarding Respondent's Criminal Status in Greece is attached hereto and incorporated herein as Petitioner's **Exhibit H**.

## II. PRESENT HAGUE CONVENTION LITIGATION

On October 31, 2007, Ms. Asvesta filed suit in the United States District Court for the Northern District of California against Respondent George Petroutsas and requested the immediate issuance of a show cause order. This civil action was brought pursuant to The Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980[2] (hereinafter the "Hague Convention" or "Convention") and the International Child Abduction Remedies Act[3] (hereinafter "ICARA"), by Ms. Asvesta as a result of the abduction and wrongful removal of Ms. Asvesta's two-year-old son from Greece, the child's habitual residence. On November 8, 2007, this Court issued a Show Cause Order requiring the Respondent to appear on November 16, 2007 with the minor child. On November 15, 2007, this Court issued an Order for Alternative Service allowing service on the Respondent by e-mail, leaving a copy of the Verified

---

[2] T.I.A.S. No. 11,670 at 1, 22514 U.N.T.S. at 98, *reprinted in* 51 Fed. Reg. 10,494 (1986).

[3] 42 U.S.C. 11601 *et seq.* (2001). ICARA was created to deal with the sudden abduction of children and to allow a petitioner to assert his or her rights in exigent circumstances. *See Distler v. Distler*, 26 F. Supp. 2d 723, 727 (D.N.J. 1998).

Petitioner's Evidentiary Hearing Memorandum      6

Petition and Show Cause Order in the Respondent's mailbox, and service on Respondent's attorney in the related state court matter. Despite being properly served and having notice of the November 16, 2007 Show Cause Hearing, Respondent failed to appear. The Court issued an Order and Warrant of Arrest for the minor child, and an Order for Entry Into N.C.I.C. placing the child in the national database for missing persons. The Court set a further Show Cause Hearing for November 30, 2007, again requiring the Respondent to appear and to produce the minor child. On November 30, 2007, both parties appeared with counsel, and Respondent did finally produce the minor child. At the November 30 hearing, this Court set the matter in for an evidentiary hearing on December 17, 2007 and ordered the Order and Warrant of Arrest to be temporarily stayed. The Court also requested that Petitioner file a memorandum in response to Respondent's Pre-Hearing Memorandum filed on the afternoon of November 29, 2007, to specifically address the issue of whether comity should be accorded to orders issued by the Greek courts in a Hague Convention action the Respondent himself filed and lost in Greece against the Petitioner.

### III. HAGUE CONVENTION STANDARDS

In a suit brought pursuant to the Hague Convention and ICARA, a United States Court has the authority to determine only the merits of the Petitioner's abduction claim, and may not address the merits of any underlying custody dispute between the parties. *Holder v. Holder*, 392 F.3d 1009, 1013 (9th Cir. 2004); *see also Friedrich v. Friedrich*, 983 F.2d 1396, 1400 (6th Cir. 1993); Hague Convention, Art. 19; ICARA, 42 U.S.C. § 11601(b)(4).

The Court's determination of an abduction claim is limited initially to making a determination as to whether the Respondent wrongfully removed or retained the minor child outside the child's habitual residence in violation of right of custody of the requesting nation. *Blondin v. Dubois*, 189 F.3d 240 (2nd Cir. 1999); *see also* ICARA at § 11603(e)(1)(a). The

Petitioner bears the burden of proving wrongful removal by a preponderance of the evidence. ICARA at § 11603(e)(1)(a).

Pursuant to Article 3 of the Hague Convention, a removal is wrongful if it is in violation of the Petitioner's custody rights under the law of the State where the child was habitually resident at the time of the removal, and at the time of the removal the Petitioner was actually exercising her custody rights. If a Petitioner proves by a preponderance of the evidence that the child was wrongfully removed pursuant to Article 3 of the Convention, Article 12 of the Convention requires that the Court shall order the return of the child to the State of his habitual residence forthwith. A respondent may however, pursuant to Article 13 of the Convention, prove that return should not be ordered by establishing that the petitioner was not actually exercising custody rights at the time of the removal, or that there is a grave risk that the child's return would expose the child to physical or psychological harm, or otherwise place the child in an intolerable situation. *Id.* at § (e)(2)(A-B).

IV.  **THIS COURT SHOULD ACCORD COMITY[4] TO ORDERS ISSUED BY THE GREEK COURTS IN RESPONDENT'S HAGUE CONVENTION PETITION IN GREECE**

Comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation." *Dependable Highway Exp., Inc. v. Navigators Ins.*

---

[4] In the present case, the Court is considering the issue of comity, in deciding the level of deference to be given to the Greek Hague Convention court's decision rather than full faith and credit, because the order in question is that of a foreign nation rather than that of a court of the United States (either federal or state). Comity, rather than full faith and credit is the proper doctrine to be applied to decisions of foreign nations, as full faith and credit applies only to the states of the United States and its territories. *Wilson v. Marchington*, 127 F.3d 805 (9th Cir. 1997); *see also Diorinou v. Mezitis*, 237 F.3d 133 (2nd Cir. 2001)(finding that comity, rather than full faith and credit applies to judgments of other signatories to the Hague Convention). However, the court's analysis under the doctrine of comity is similar to that under the doctrine of full faith and credit, in that the primary concern is whether due process was accorded to the parties in the proceedings resulting in the foreign judgment. *Id.*

Petitioner's Evidentiary Hearing Memorandum     8

*Co.*, 498 F.3d 1059, 1067 (9th Cir. 2007) quoting *Hilton v.Guyot*, 159 U.S. 113 (1895). The term comity refers to "the degree of deference that a domestic forum must pay to the act of a foreign government not otherwise binding on the forum." *Id.*, quoting *Laker Airways Ltd. v. Sabena Belgian World Airlines,* 731 F.2d 909, 937 (D.C.Cir.1984).

The Ninth Circuit has recognized *Hilton v. Guyot* as the case which provides the guiding principles of comity. *Wilson v. Marchington*, 127 F.3d 805, 810 (1997), *cert. denied*, 523 U.S. 1074 (1998); *see generally Hilton*, 159 U.S. 113. Comity "is the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws." *Id.* at 809, quoting *Hilton*, 159 U.S. at 164. Comity should not be accorded only when "its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect." *Id.*, quoting *Somportex Ltd. v. Philadelphia Chewing Gum Corp.*, 453 F.2d 435, 440 (3rd Cir. 1971).

In order for a court of the United States to accord comity to judgments of foreign courts, the foreign judgment must have been obtained in a manner that accords with the basics of due process as recognized in the United States. *Id.* at 811; *see also Bank Melli Iran v. Pahlavi*, 58 F.3d 1406 (9th Cir. 1995). Comity, however, does not require that the foreign nation "utilize judicial procedures identical to those used in the United States courts." *Id.* Due process, as that term is employed in comity, is concerned with the factors to which the Court attached particular significance in *Hilton*, "namely that there has been opportunity for a full and fair trial before an impartial tribunal that conducts the trial upon regular proceedings after proper service or voluntary appearance of the defendant, and that there is no showing of prejudice in the tribal court or in the system of governing laws." *Id.* at 811; *see also Hilton*, 159 U.S. 113. The Ninth

Circuit has recognized that only evidence "that the judiciary was dominated by the political branches of government or by an opposing litigant, or that a party was unable to obtain counsel, to secure documents or attendance of witnesses, or to have access to appeal or review" are examples of situations in which a United States court may decide not to accord comity to a foreign judgment. *Id.*, quoting Restatement (Third) of Foreign Relations Law of the United States § 482 comment. b (1986). None of such factors exist here.

In the present case, in the Respondent's Greek Hague Convention proceeding, there was a full and fair trial before an impartial tribunal that conducted the trial in open court upon regular proceedings after voluntary appearance of the Respondent with counsel, and there is no showing of prejudice in the Greek court or in the system of governing laws. Further, there is absolutely no evidence that the Greek judiciary was dominated by a political branch of government or dominated by Ms. Asvesta, Respondent was represented by counsel and produced documents and witnesses, and has access to appeal or review. Therefore, the decision of the Greek court in Respondent's Hague Convention proceeding should be accorded comity.

On February 20, 2006, Respondent filed a Hague Convention petition against Ms. Asvesta in the Greek Piraeus Court of First Instance alleging that Ms. Asvesta wrongfully removed the child from the United States to Greece. *See* **Exhibit A**. On March 23, 2006, the Greek Court, which properly had established personal and subject matter jurisdiction over the parties and Respondent's Hague Convention petition, held a full evidentiary hearing on Respondent's petition, at which the Respondent was represented by the Greek Ministry of Justice and the Petitioner was also present and represented by independent counsel. *Id.* Both parties had notice and opportunity to be heard, presented their respective cases to the Greek Court and fully participated in the litigation. *Id.* As a result of the hearing on Respondent's Hague Convention

Petitioner's Evidentiary Hearing Memorandum      10

petition, and after consideration of witness testimony offered by individuals called by each party and several affidavits offered for the Greek Court's consideration, the Pireaus Court of First Instance issued its decision and finding of fact. *Id.* Ultimately, the Court of First Instance dismissed the Respondent's petition as "substantively ungrounded." *Id.* at 9. The court based its decision on a specific finding that at the time Ms. Asvesta and the child went to Greece, the travel was done with the express written consent of the Respondent. *Id.* at 7. The Court further specifically found that the child's move to Greece was not wrongful pursuant the Hague Convention because the Respondent was not exercising his rights to custody of the child because the Respondent was "indifferent to his family obligations, he was not engaged in the minor's care, and was indifferent to his psychosomatic development." *Id.* at 9. Additionally, the court found that return of the child to the United States would expose the child to severe danger of mental tribulation in being deprived of the security and bond with Ms. Asvesta (exactly the type of analysis conducted in Hague cases filed in the United States federal courts). *Id.* The court therefore properly declined to order the minor child returned to the United States. *Id.* The Respondent appealed the Greek Court's decision. A hearing on the appeal was scheduled for November 19, 2007, but was administratively postponed until February 14, 2008. Although the appeal in the Greek Hague Convention petition is pending, as in the United States the order of the Greek trial court remains in full force and effect and is a valid final order of the Greek court, which may not be re-litigated apart from any appellate level proceeding. The order in the Greek Hague Convention matter is binding on all parties involved until further order of a Greek appellate Court. A copy of the Affidavit of Greek Law explaining the status of the Respondent's appeal is attached hereto and incorporated herein as Petitioner's **Exhibit I**.

The Respondent then resorted to the snatch and grab measure of abducting the child to

Petitioner's Evidentiary Hearing Memorandum                           11

the United States on July 22, 2007. In response thereto, Ms. Asvesta has filed this Hague Convention petition, seeking a return of her child to his habitual residence of Greece, through the proper legal mechanism of a Hague Convention proceeding. Despite a final decision by the Greek court to the contrary, as a defense to Ms. Asvesta's petition in the United States, Respondent alleges that the United States remains the child's habitual residence because Ms. Asvesta supposedly wrongfully removed the child to Greece.

Respondent misunderstands the fundamental principles of comity and requests that this Court decline to accord the substantial deference typically accorded decisions of foreign courts as a matter of comity. There is no merit in Respondent's position.

"American courts will normally accord considerable deference to foreign courts as a matter of comity[5]." *Diorinou v. Mezitis*, 237 F.3d 133, 142 (2001), citing *Hilton v. Guyot*, 159 U.S. 113 (1895). A court determining the level of deference given to a foreign judgment typically considers the fairness of a foreign judicial system as a whole. *Diorinou* 237 F.3d at 143., citing *Hilton*, 159 U.S. at 202. However, a "case specific inquiry is sometimes appropriate." *Id.*

United States courts have taken particular notice that comity is "at the heart of the [Hague] Convention." *Id.*, quoting *Blondin v. Dubois*, 189 F.3d 240 (2nd Cir. 1999). The Hague Convention is designed to secure "international cooperation regarding the return of a child wrongfully taken by a parent from one country to another." *Gonzalez v. Gutierrez*, 311 F.3d 942, 944 (9th Cir. 2002). Moreover, there is "nothing in ICARA or its legislative history to indicate that Congress wanted to bar the courts of this country from giving foreign judgments the more

---

[5] The Second Circuit case, *Diorinou v. Mezitis*, is the only case directly on point that undersigned counsel has found where a federal appellate court has specifically considered the issue of whether to accord comity to a decision and order of a foreign court in the context of the Hague Convention.

Petitioner's Evidentiary Hearing Memorandum    12

flexible standard of deference normally comprehended by the concept of international comity." *Diorinou* 237 F.3d at 143.

The Explanatory Report by Elisa Perez-Vera[6] (the "Perez-Vera Report") further explains the concept that comity is at the heart of the Hague Convention, stating that the Convention is "above all a convention which seeks to prevent the international removal of children by creating a system of close co-operation among the judicial and administrative authorities of the Contracting States." Elisa Perez-Vera, *Explanatory Report on the 1980 Hague Child Abduction Convention* ¶ 35 (1982), *available at* www.hcch.net/index. The systems that exist to return children are largely dependent upon the co-operation of Central Authorities, "a co-operation which itself rests upon the notion of reciprocal rights and duties." *Id.* at ¶ 37. By virtue of the Convention's "semi-open" nature, it is one of co-operation, in that the individual Contracting States must declare their acceptance as to each other Contracting State's accession in order for the Convention to be applicable between those two States. *Id.* at ¶ 41. The method of acceptance employed by the Convention signatories illustrates the "importance which the States attached to the selection of their co-signatories in those questions which form the subject matter of the Convention." *Id.* The method of acceptance further demonstrates the belief of the signatory States that a "system based on co-operation could work only if there existed among the Contracting Parties a sufficient degree of mutual confidence." *Id.* The Convention was ratified

---

[6] Elisa Perez-Vera was the official Hague Conference reporter for the Convention. Her report is recognized by the Hague Conference on International Law as the official history and commentary on the Convention and is considered a "source of background on the meaning of the provision of the Convention." Hague International Child Abduction Convention; Text and Legal Analysis (Department of State), 51 Fed. Reg. 10494 (March 28, 1986); *see also Mozes v. Mozes*, 239 F.3d 1067, 1070 (9th Cir. 2001) (recognizing the Perez-Vera Report as the official history and commentary of the Convention).

between the United States of America and Greece on June 1, 1993, thereby necessarily establishing the requisite mutual confidence between the two Hague Convention signatories.

The Second Circuit considered the issue of comity and deference to foreign judgments as applied to the Hague Convention in *Diorinou v. Mezitis*, a case substantially similar to the present case. In *Diorinou*, the parties and children had all originally lived in New York. *Diorinou*, 237 F.3d 133. The children were born in the United States and were dual citizens of the United States and Greece. *Id*. The parties and children went to Greece for vacation in the summer of 1995. *Id*. There was conflicting information and testimony as to how and with whose consent the children remained in Greece. The children remained in Greece with their mother for a period of approximately five years following the 1995 vacation, before being removed from Greece to the United States by their father. *Id*. Between the 1995 arrival in Greece and the 2000 removal to the United States, litigation on the issue of custody proceeded in both countries. *Id*. The courts in the New York custody case had awarded custody of the children to the father and ordered the return of the children from Greece in a New York state habeas corpus proceeding. *Id*. The Greek court awarded custody of the children to their mother, and declined to give recognition to the United States custody orders. *Id*. Similar to the present case, the father filed a Hague Convention petition against the mother in Greece. *Id*. The petition was dismissed after a hearing at which the First Instance Court in Greece determined that the father was not exercising his custody rights at the time the children were brought to Greece, had consented to the children remaining in Greece, and that there was a grave risk in returning the children to the United States in that they would be exposed to physical or psychological harm. *Id*. Also as in the present case, dissatisfied with the decision of the Greek courts, the father resorted to self-help, and using duplicate passports, which were suspected to be fraudulently obtained, the father removed the

children to the United States from Greece. *Id.* Upon their removal from Greece, the mother filed a Hague Convention petition for their return. As a defense to the mother's petition, the father alleged that he had not wrongfully removed the children, because the United States was the children's habitual residence given that the mother allegedly wrongfully removed the children from the United States to Greece, despite the existing Greek order to the contrary. *Id.* The father petitioned the United States court to decline to accord comity to the Greek court order dismissing his Hague Convention petition against the mother, in which the Greek court specifically determined that the children were not wrongfully removed to Greece. The *Diorinou* court did defer to the Greek court's Hague Convention decision as a matter of comity, and ordered that the children be returned to Greece, their habitual residence. *Id.* at 146.

The Second Circuit based its decision both on general principles of comity and on case specific facts and findings. *Id.* Although the *Diorinou* court had "no reason to question the Greek system of jurisprudence," it found that the particular facts and complicated sequence of litigation warranted a detailed consideration on the level of deference to properly accord the Greek court's decision. *Id.* at 143. The Court began its analysis with an "inclination to accord deference to the Greek Hague petition adjudications as a matter of comity." *Id.* at 145. The Court was "given pause by some aspects" of the Greek court's rulings, but after careful analysis, ultimately accorded deference to the Greek decision as a matter of comity. *Id.*

In the present case, Respondent argues that this court should not accord deference to the Greek court's rulings as a matter of comity. In support of his position, Respondent offers merely the hearsay State Department's Report on Compliance with the Hague Convention on the Civil Aspects of International Child Abduction dated April 2007 ("Report on Compliance"). Although the Report on Compliance labels Greece as "demonstrating patterns of non-compliance," that

label does not discount the principle that comity is of primary importance to the Hague Convention[7].

An analysis in the present case based both on general principles of comity and on case specific facts and findings support the strong inclination courts have pursuant to the Hague Convention to defer to prior decisions of other Hague Convention signatories. Failure to accord such deference severely undermines the stated purpose and goals of the Convention.

This Court should undertake a similar analysis as applied by the *Diorinou* court to determine that deference and comity should be accorded to the Greek Hague Court's decision. The particular facts of this case are strikingly similar to those contemplated by the *Diorinou* court. In *Diorinou*, as in the present case, the Greek court found that the children were not wrongfully removed from the United States because the father had consented to the travel to Greece, that the father was not actually exercising custody at the time the children relocated to Greece and that the children would be exposed to serious physical and/or psychological harm on being returned to the United States. *Id.* at 145. After careful review of the Greek court's decision, the court in *Diorinou* found "no reason not to defer to the Greek court's fundamental ruling that [the mother's] retention on the children in Greece... was not wrongful..." *Id.* Also similar to the facts of the present case, the *Diorinou* court considered the conflicting custody orders issued by

---

[7] According to the State Department's Report on Compliance, there are two levels of non-compliance: Countries Not Compliant, and Countries Demonstrating Patterns of Non-Compliance. *United States Department of State*, Report on Compliance with the Hague Convention on the Civil Aspects of International Child Abduction, April 2007, available at http://travel.state.gov/pdf/child_abduction_Compliance_Report.pdf. In placing countries into the compliance categories, the State Department considers three compliance areas: central authority performance, judicial performance, and law enforcement performance. *Id.* Greece is placed in the less serious category of Countries Demonstrating Patterns of Non-Compliance. *Id.* In order to be placed into that category, a country merely has to demonstrate non-compliance in one of the three categories. In the Report on Compliance, the State Department specifically noted that in late 2006 and early 2007 (after the reporting period had closed for the cited report), that it was encouraged by a recent Greek appellate decision and subsequent law enforcement action. *Id.*

Petitioner's Evidentiary Hearing Memorandum               16

the United States and Greek courts. *Id.* at 146. Even with respect to the conflicting custody orders, the *Diorinou* court saw "no basis for declining to defer to the principal ruling in the Greek Hague petition litigation…" *Id.*

In analyzing the particular facts in the present case, facts strikingly similar to those in *Diorinou*, it is appropriate for this Court to accord deference to the Greek Court's Hague Convention decision and order as a matter of comity. In the present case, moreover, the Greek courts in a proceeding completely separate from the Respondent's Hague Convention proceeding, have declined to recognize the United States custody orders after an application for recognition filed by the Respondent. Additionally, also as in *Diorinou*, while the Respondent alleges that the Greek court in the Hague Convention proceeding improperly utilized the Article 13(b) defense of grave risk of physical and psychological harm to the child if returned to the United States (which is in fact a valid exception to return), that ground for dismissal was just one of many specifically articulated by the Greek court. The Greek court's order dismissing the Respondent's Hague Convention petition clearly states that its primary reasons for dismissing the petition were that the Respondent consented in writing to the original travel to Greece, and that based on testimony, the Respondent further consented to the child's stay in Greece stating that he would visit the child in Greece, in other words, acquiescing[8] to the child's stay in Greece. *See* **Exhibit A** at 8. The Greek court further specifically stated that the Respondent was not exercising his rights of custody at the time the child was taken to Greece with his mother. *Id.* In order to require a court to order the return of a child, the moving party must prove that he or she was exercising rights of custody at the time of the removal. Considering all the evidence

---

[8] Article 13(a) of the Hague Convention establishes that a parent's acquiescence to a child's relocation is an additional exception to the court's duty to return a child, and establishes that a removal is not wrongful under the Convention if the complaining parent has acquiesced to the relocation.

Petitioner's Evidentiary Hearing Memorandum      17

presented, the Greek court found that the Respondent did not make that required evidentiary showing. *Id.*

A careful analysis of the Greek court's decision to dismiss Respondent's Hague Convention petition establishes that the decision was made properly and fairly in a manner consistent with the Hague Convention goals and objectives and entirely consistent with due process in this country. The *Diorinou* court explicitly stated that it had "no reason to question the fairness of the Greek system of jurisprudence." *Id.* at 143.

Respondent improperly seeks to bring the Greek system of jurisprudence into question through presentation of the State Department's Report on Compliance. A careful examination of the findings of fact and conclusions of law which are the basis of the Greek Hague Convention decision in favor of Ms. Asvesta, establishes that even if Greece was in the past considered to exhibit a "pattern of non-compliance" with the Convention, the Greek court in this particular case properly applied the Hague Convention in reaching its decision.

This Court should therefore accord deference to the decision of the Greek court finding that the child was not wrongfully removed from Greece as a matter of international comity at the heart of the Hague Convention, because the Greek court's decision accorded the Respondent the same level of due process rights accorded litigants in United States Courts.

## V.     CONCLUSION

On July 22, 2007, the Respondent wrongfully removed the minor child from Ms. Asvesta's care in Greece to the United States. At the time of the removal, Greece was the child's habitual residence. Ms. Asvesta had and continues to have rights of custody pursuant to Greek orders at the time of the removal and was actually exercising those rights. Therefore, pursuant to Article 12 of the Hague Convention, the child must be returned to his habitual residence of

Greece forthwith.

The Greek courts have already determined that Ms. Asvesta did not wrongfully remove the child from the United States to Greece. The Greek court issued an order in the Respondent's Hague Convention proceeding making specific findings of fact and conclusions of law to support its decision. The decision and order of the Greek court are entitled to deference as a matter of international comity. As a result of according deference and comity to the decision and order of the Greek court, the Respondent is estopped from re-litigating his allegation that the child's habitual residence is the United States due to Ms. Asvesta's wrongful removal of the child to Greece.

For the reasons set forth herein, Petitioner, Despina Asvesta, respectfully requests that this Court issue an order directing the return of A.G.P. to his habitual residence of Greece forthwith.

Respectfully Submitted,

__/S/_____
Renee C. Day, Esquire
Hoover & Bechtel, L.L.P.
The Garden Alameda
1570 The Alameda, Suite 101
San Jose, California 95126
(408) 947-7600
(408) 947-7603 (fax)
renee@hoover-bechtel.com

        ___/S/_____
        Stephen J. Cullen, Esquire
        *pro hac vice*
        Kelly A. Powers, Esquire
        *pro hac vice*
        Miles & Stockbridge P.C.
        One West Pennsylvania Avenue
        Suite 900
        Towson, Maryland 21204
        (410) 821-6565
        (410) 385-3709 (fax)
        scullen@milesstockbridge.com
        kpowers@milesstockbridge.com

        *Attorneys for Petitioner*