*Fee Paid*

George Petroutsas
300 Plum Street
Space 69
Capitola, CA 95010
IN PRO SE

FILED

2008 FEB 13 P 4:31

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
N.A. S.J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
San Jose Division

DESPINA ASVESTA,
22 Platonos Street
Nikaia, 18454
Piraeus, Greece

        Petitioner

    v.

GEORGE PETROUTSAS
300 Plum Street, SPC 69
Capitola, California 95010

        Respondent

_____/

Case No.   C 07 05535 JF

NOTICE OF APPEAL

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

This document gives notice that Respondent, GEORGE PETROUTSAS, hereby appeals

from the final order entered by the District Court named above on January 16, 2008.

This appeal is made to the United States Court of Appeals for the Ninth Circuit.

Dated: 2/13/08

        George Petroutsas
        Respondent
        831-840-2962

George Petroutsas
300 Plum Street
Space 69
Capitola, CA 95010
IN PRO SE


# IN THE UNITED STATES COURT OF APPEALS
## NINTH CIRCUIT


DESPINA ASVESTA,
22 Platonos Street
Nikaia, 18454
Piraeus, Greece

       Petitioner

    v.

GEORGE PETROUTSAS
300 Plum Street, SPC 69
Capitola, California 95010

       Respondent

_____/

Case No.  C 07 05535 JF

CIRCUIT RULE 27-3
CERTIFICATE


ATTORNEYS FOR PETITIONER:

Miles & Stockbridge, P.C.
One West Pennsylvania Avenue
Suite 900
Towson, Maryland  21204-5076
410-821-6565

Hoover & Bechtel
The Garden Alameda
1570 The Alameda,  Suite 101
San Jose,  CA  95126
408-947-7600


RESPONDENT:

EMERCENCY MOTION
CIRCUIT RULE 27-3
COVER SHEET
C-07-05535 JF

       - 1 -

George Petroutsas
300 Plum Street
Space 69
Capitola, CA 95010
831-840-2962
IN PRO SE

NATURE OF EMERGENCY:

Petitioner and Respondent were married in Santa Cruz, California. Petitioner is a Greek

citizen and Respondent is a U.S. citizen. They have one (1) minor child together.

Respondent gave written permission to Petitioner to travel with their minor child to

Greece for one (1) month. Petitioner kept the minor child in Greece. Respondent

*immediately* obtained an order from California granting him sole legal and physical

custody of the minor child, ordering Petitioner to return with the minor child *and* stating

that the habitual residence of the minor child was the United States – specifically

California; claiming Santa Cruz county as having jurisdiction. Petitioner refused despite

numerous orders. Respondent sought relief in Greece by way of the Hague Treaty. The

hearing held in Greece pursuant to his Petition under the Hague Treaty was in violation

of Respondent's constitutional rights: the habitual residence of the minor child was never

discussed – let alone determined. Respondent's legal counsel was prohibited from

representing him at the hearing – a government representative from Greece was assigned

days before [meeting with Respondent for approximately 30 minutes before the hearing].

Respondent was not allowed to testify. Respondent's Hague Petition was dismissed and

the child was not returned to the United States. In addition, the government

representative failed to timely file his notice of appeal and lost Respondent's right to

appeal the Hague Petition on it's merits.

Pursuant to the valid order of the Santa Cruz County Superior Court stating that jurisdiction for custody in this matter still remained within it's jurisdiction and the habitual residence of the minor child was the United States, Respondent returned the minor child to the United States.

On October 31, 2007,. Petitioner sought relief in the District Court of the Sixth District pursuant to a Petition under the Hague Treaty for immediate return of the minor child to Greece – demanding that the United States grant comity to the Greek order that dismissed Respondent's Hague Petition and subsequently granted her custody of the child.

On January 16, 2007, the District Court granted Petitioner's request and ordered immediate return of the minor child to Greece. Respondent seeks an immediate stay of that order to avoid irreparable harm.

A request for stay was requested in the District Court of the Sixth District and was denied. Respondent now seeks relief from this court.

Respondent has notified all counsel listed above of this request by serving a copy of this motion on counsel by overnight mail on _____ .

Said request is based upon: (1) the irreparable harm to the minor child absent the stay; (2) that granting the stay would cause diminimus or no harm to the minor child or the Petitioner; (3) that serious legal questions are raised in Respondent's appeal and in balancing the hardships of granting the stay pending the appeal, versus denying the appeal, greater and irreparable harm would befall both the Respondent and the minor child in denying the stay; (4) there is a public interest in granting Respondent's request for stay; and (5) there is a likelihood of Respondent prevailing on his appeal.

[**Wasniewski vs. Grzelak-Johannsen** 2007 U.S. Dist. (N.D. Ohio, Aug. 15, 2007) Case No. 5:06-CV-2548;  **Himri, et al. vs. Ashcroft** (2003) 344 F.3d 1261]

A.    IRREPARABLE HARM

It has been determined that Greece has engaged in a pattern of non-compliance with the Hague Convention.  [**See, Affidavit of Susan E. Rohol attached hereto and incorporated herein.**]  If allowed to immediately remove the minor child and return to Greece, the child will lose his relationship with his father.  Because Greece denied Respondent of his representation by his own lawyer at the Hague hearing in Greece and appointed a government representative, who, in turn, lost Respondent's appellate rights by failing to file within the deadline;  Respondent has know legal possibility of rectifying his legal rights in Greece.  [**See, Affidavit of Stilianos H. Gregoiou and Nineta Papadavid attached hereto and incorporated herein.**]  Even if Greece determines that they did not comply with the Hague treaty with respect to Respondent's hearing, there is no possibility of a stay pending any remedy to the *Greek* Hague hearing AND the appeal on the *merits* of Respondent's Hague hearing has been lost due to Greece prohibiting Respondent from being represented by his own attorney at the proceedings.

Clearly, if allowed to take the minor child immediately back to Greece, there would be absolutely no cooperation nor compliance by the Greek government even if Respondent prevailed in his appeal herein.

B.    LITTLE OR NO HARM TO GRANT STAY

Although the policy and purpose of Petitioners sought pursuant to the Hague Treaty is to expediently return children wrongfully taken from their habitual country, this case is unique.  In this case, we have two (2) conflicting orders from two (2) countries.

Although Respondent has had the minor child in his custody in the United States, Petitioner has had ample access to the child during this period – despite the fact that she's cancelled numerous visits and telephone calls to the child. There would be little harm to the child or the Petitioner to stay the order and allow the minor child to stay in the United States a little longer with Respondent pending the disposition of Respondent's appeal; especially when compared to the irreparable harm in denying such a stay.

## C.    BALANCING LEGAL QUESTIONS

From the beginning, this case involved a very convoluted and complex legal question as to whether to give comity to Greece's order of dismissing Respondent's Hague Petition and the subsequent custody order to Petitioner. There was overwhelming evidence produced at the hearing that the Hague hearing brought by Respondent in Greece clearly did not comply with the requirements of the treaty. The habitual residence of the child was not discussed whatsoever. Respondent was denied proper legal representation. It even appears that Greece's own "appellate" court is "recommending" that the hearing was violative of the requirements of the treaty. Numerous United States cases mandate that the U.S. is *not* to give comity to a foreign order that violates a U.S. citizen's constitutional rights. Respondent alleges this very case here. The appeal clearly will balance this very precarious legal question.

## D.    PUBLIC INTEREST IN GRANTING THE STAY

The U.S. State Department has already issued their 2007 Report declaring that Greece has engaged in a pattern of non-compliance with respect to the Hague Treaty and the

return of children. **[Affidavit of Susan E. Rohol]** Pursuant to Ms. Rohol's affidavit, their non-compliance are based in the very complaints that are the foundations of this very case. This case is an example of the many non-compliant cases by Greece to the United States. It is imperative to the public interest to uncover the deceit and non-compliance of Greece. To deny the stay would further the conduct and aid Greece in their further non-compliance to the Treaty.

E.    LIKLIHOOD OF PREVAILING

The evidence produced during the hearing clearly indicated that Respondent's "Hague" hearing in Greece was not only non-compliant with the requirements of the Treaty, but in violation of his constitutional rights. The habitual residence of the minor child was never discussed – let alone determined. Respondent was denied his legal counsel merely days before the hearing. Respondent was not allowed to testify in defense of the allegations made against himself. These are only a few of the myriad of violations to the Treaty at the hearing. As a result, case law clearly dictates that the U.S. will not give comity to any foreign order or judgment that violates the constitutional rights of a U.S. citizen – Respondent is a U.S. citizen. Accordingly, Respondent's appeal has a high likelihood of prevailing.


Accordingly, Respondent respectfully requests that this Court order a stay of its order pending the appeal in this matter.

Respectfully submitted,

George Petroutsas, Respondent

AFFIDAVIT OF SUSAN E. ROHOL

COMMONWEALTH OF VIRGINIA)

                     )    SS

CITY OF ALEXANDRIA       )

NOW COMES THE AFFIANT, Susan E. Rohol, having been duly sworn according to law, deposes and states the following:

1. I am currently employed as the General Counsel of The National Center for Missing and Exploited Children (NCMEC). I was previously employed as the Director of the International Missing Children's Division and have been employed by NCMEC since September 2005.

2. NCMEC is a private, nonprofit corporation, incorporated under the laws of the District of Columbia. NCMEC is not an agency or instrumentality of the United States government and neither NCMEC nor its employees are agents of the United States government.

3. NCMEC, through a grant from the U.S. Department of Justice, handles cases of missing children, including those abducted by a parent or family member.

4. NCMEC has entered into a Cooperative Agreement with the Administrator of the Office of Juvenile Justice and Delinquency Prevention to perform certain tasks specified by Congress in the Missing Children's Assistance Act, 42 U.S.C. §§ 5771-5773, including that of providing technical assistance to local and state governments, public and private nonprofit agencies, and individuals in locating and recovering missing children. 42 U.S.C. § 5773(b)(1)(F).

5. Pursuant to 22 C.F.R. § 94.2, the U.S. Department of State, Office of Children's Issues, performs the functions of the Central Authority for the United States under the Hague Convention of October 25, 1980 on the Civil Aspects of International Child Abduction (Hague Convention). Pursuant to 22 C.F.R. § 94.6 and agreement among NCMEC, the Department of Justice, and the U.S. Department of State, applications seeking the return of or access to children wrongfully removed to or retained in the U.S. are processed by NCMEC.

6. NCMEC and the U.S. Department of Justice's Office of Juvenile Justice and Delinquency Prevention in cooperation with the American Bar Association (ABA) Center on Children and the Law produce a publication titled Family Abduction, Prevention and Response, Fifth Ed., copyright March 2002. The Chapter titled *Preventing Abductions* enumerates steps parents can take to safeguard their children from abduction, and includes the following prevention tips: [For additional information see the following ABA Reports: *Early Identification of Risk Factors for Parental Abduction* (NCJ 185026) available at: http://www.ncjrs.gov/html/ojjdp/2001_3_1/contents.html and *Family Abductors: Descriptive Profiles and Preventive Interventions* (NCJ 182788), available at: http://www.ncjrs.gov/html/ojjdp/jjbul2001_1_2/contents.html].

    A. Obtain a custody/visitation determination that clearly specifies the rights of each parent with respect to the child. Avoid using vague language, such as "reasonable



visitation," and avoid joint custody orders in parental abduction and family violence cases. Specify residential arrangements. Consider supervised visitation, bonds and other guarantees, prohibitions on unauthorized pick-up of the child, restrictions on interstate and/or international removal of the child (i.e., surrender passports, prohibit passport applications, notify foreign consulate of passport restrictions.) Authorize law enforcement assistance to recover the abducted child.

B.  Be certain that the custody determination clearly states the basis for the court's jurisdiction and the manner in which notice and opportunity to be heard were given to the parties.

C.  When considering which prevention provisions to include in the custody determination, evaluate the risk of abduction, the obstacles you may encounter trying to recover your child, and the potential harm the child is likely to suffer if abducted. More restrictive preventive measures will be needed when the risk of abduction is high, obstacles to recovering the child would be difficult to overcome, and abduction is likely to be harmful to the child.

D.  Consider "red flag" indicators of abduction risk (below). There may be an increased likelihood of an abduction if a parent has:

    a.  Previously abducted the child;

    b.  Threatened to abduct the child;

    c.  No strong ties to the child's home state;

    d.  Friends or family living out of state or in another country;

    e.  A strong support network;

    f.  No job, is able to work anywhere, or is financially independent—in other words is not tied to the area for financial reasons;

    g.  Engaged in planning activities such as quitting a job; selling a home; terminating a lease; closing a bank account or liquidating other assets; hiding or destroying documents; applying for a passport, birth certificates, school or medical records; or undergoing plastic surgery;

    h.  A history of marital instability, lack of cooperation with the other parent, domestic violence or child abuse; or

    i.  A criminal record.

E.  Six personality profiles of abductors (below) may indicate an increased likelihood of an abduction:

    Profile 1:  Parents who have threatened to abduct or have abducted previously.

    Profile 2:  Parents who are suspicious or distrustful because of their belief that abuse has occurred and who have social support for their belief.

Profile 3: Parents who are paranoid.

Profile 4: Parents who are sociopathic.

Profile 5: Parents who have strong ties to another country and are ending a mixed culture marriage.

Profile 6: Parents who feel disenfranchised from the legal system (e.g., those who are poor, a minority, or victims of abuse) and have family and social support.

F. When a court has decided to allow a child to visit or relocate to another country, we recommend that the U.S. court require that the party seeking to remove the child ensure that the U.S. order is registered/domesticated (where possible) in the court of the country to which the child will travel. In order to prevent violations, we recommend that the domesticated order be put in place *prior* to the child's travel to the foreign country.

7. The Second National Incidence Study of Missing, Abducted, Runaway and Throwaway Children (NISMART – 2), prepared by the Office of Juvenile Justice and Delinquency Prevention, estimates that 203,900 family abduction cases occur annually in the United States. [Full report available at: http://www.missingkids.com/en_US/documents/nismart2_overview.pdf].

8. Greece ratified the Hague Convention on the Civil Aspects of International Child Abduction on March 19, 1993. The U.S. accepted Greece's ratification to the Hague Convention on June 1, 1993.

9. NCMEC's international case database contains exclusively cases of international family abduction reported to NCMEC between 1995 and the present. NCMEC records each missing child as an individual case.

10. NCMEC's database reflects that in sixty-seven percent (67%) of our active (unresolved) cases involving children taken from the U.S. to Greece, we have been seeking the return of the children for more than five years. Thirty-three percent (33%) of our active (unresolved) cases of children taken from the U.S. to Greece have been unresolved for more than ten years.

11. NCMEC's database reflects that that out of all of our closed cases involving a child taken from the U.S. to Greece, forty-two percent (42%) of the cases were never recovered. NCMEC's database reflects that that in eighty-two percent (82%) of our resolved cases involving a child taken from the U.S. to Greece, we sought the return of the children for more than one year. Out of all our resolved cases involving a child taken from the U.S. to Greece, only eighteen percent (18%) of the recoveries were the result of litigation under the Hague Convention on the Civil Aspects of International Child Abduction.

12. The 2007 Compliance Report for the 1980 Hague Convention on the Civil Aspects of International Child Abduction by the U.S. Department of State states that "Greece continues to demonstrate a pattern of noncompliance with the Convention. The Department sees patterns of noncompliance in both Greek judicial performance and law

enforcement performance. Despite efforts by the Greek Central Authority to educate judges, Greek courts typically treated Convention cases as custody matters, basing cases on the best interests of the child or other criteria outside the boundaries of the Convention.... There were also excessive delays between the court hearings and notification of the court's decision. All of these delays further violated Article 11 of the Convention requiring that Convention cases be handled expeditiously." [Full report available at: http://travel.state.gov/pdf/child_abduction_Compliance_Report.pdf]

13. I declare under penalty of perjury that the foregoing is true and correct to the best of my information and belief.

_____    12-4-07
SUSAN E. ROHOL                DATE
General Counsel
The National Center for Missing and Exploited Children
Charles B. Wang International Children's Building
699 Prince Street
Alexandria, VA 22314

_____    12/4/07
NOTARIZED                     DATE

City of Alexandria
Commonwealth of Virginia

The foregoing instrument was subscribed and sworn before me this ___4th___ day of
__December__ by __Susan E. Rohol__.
                  (name of person seeking acknowledgement)

_____
Notary Public.

My Commission expires: __Sept. 30, 2008__.

[Notary seal stamp — partially illegible]
STEPHANIE SHARNE PERL
Notary Public
Commonwealth of Virginia
[Registration number]
My Commission Expires Sep 30, 2008

B J Fadem, Esquire, Bar #118819
LAW OFFICES OF B J FADEM, APC
255 N. Market Street, Suite 210
San Jose, California 95110
408-280-1220 (voice)
408-292-4100 (fax)
fademlaw@sbcglobal.net

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### San Jose Division

DESPINA ASVESTA,
22 Platonos Street
Nikaia, 18454
Piraeus, Greece

    Petitioner

  v.

GEORGE PETROUTSAS
300 Plum Street, SPC 69
Capitola, California 95010

    Respondent

_____/

Case No. C 07 05535 JF

AFFIDAVIT OF
STELIOS GREGORIOU


## AFFIDAVIT OF GREEK LAW

I, Stilianos H. GREGORIOU, Esquire, hereby depose and say as follows:

1.  I am over the age of eighteen (18), I am competent to be a witness, and I have personal knowledge of the facts and matters pertaining to the interpretation of Greek Law, as stated in this Affidavit.

2.  I am a lawyer in good standing in Greece.

3.  I am qualified to interpret the laws of Greece.

4.          I was hired to serve as the attorney -at- law on behalf of Mr.
George Petroutsas from November 2005 through now, December 2007.

5.          The case as it stands now in Greece is evolving in three distinct
fields of Greek law.

i) The Abduction and the Application of Hague Convention by the Greek
Courts

ii) The custody and visitation rights

iii) The Recognition and Enforcement of the Santa Cruz District Court
Decision.

6.          As far as it is concerned the Abduction of little Andonis by his
mother, the Petitioner, and the relevant Application of Hague Convention
by the Greek Courts, I depose the following:

7.          Mr. Petroutsas, after consultations by phone with me some days
after the abduction, namely early December 2005, filed his Hague Petition
with the U.S. State Department under the Hague Convention on the Civil
Aspects of Child Abduction.

8.          In December 2005 the U.S. State Department Intern sent this
petition to the Greek Central Authority (Ministry of Justice), that
designated a Hearing dated on March 23, 2006.

9.          On the Hearing of March 23, 2006, the Single Member Court of
Piraeus judged the case of The Greek Public vs. Despina Asvesta and
pursuant to the Judgment No. 5042/2006 dismissed the Petition of Mr

2

Petroutsas.

10.        At the time of the Hearing, Mrs Papadavid was Mr. Petroutsas'
attorney and was present to the court as such under her quality .

11.        According to an extreme interpretation of the Hague Convention
by the Greek Public the attorney of Mr Petroutsas was not allowed to speak
on Mr. Petroutsas' behalf because the Greek Minister of Justice had
appointed a government employee, Mr. Anastasios Ralis (not an attorney),
to serve as Mr. Petroutsas' representative at the hearing. It was explained
by the Court that as the case under his Hague petition was being brought
before the Greek courts by "The People" instead of Mr. Petroutsas as an
individual petitioner, he was not to be allowed individual counsel in this
matter. This is an arbitrary and contra legem implementation of the Hague
Convention by the Greek Authorities that affects the right of a fair trial in
terms of legal representation of the petitioner and the standards of the
Hague Convention on the Civil Aspects of Child Abduction.

12.        At the hearing, a Court Clerk or Court Reporter was not present
at any time. Mr. Petroutsas was not allowed to speak at the trial and was
not allowed to defend himself against any harmful allegations made at the
trial. Mr. Petroutsas could only be represented by Mr. Ralis and by one
witness allowed to speak on Mr. Petroutsas' behalf.

13.        All the violations of the Convention referred in the "Report on
Compliance with the Hague Convention on the Civil Aspects of

3

International Child Abduction" by the US Ministry of Justice, which listed Greece as a non - compliant part with the Hague Convention, were present at the said Hearing.

14.     The Single Member Court of First Instance of Piraeus issued under injunctive measures procedure the Court Decision 5042/2006, by virtue of which, surprisingly enough, it was rejected the Petition of Mr Petroutsas for the return of the minor to his habitual residence.

15.     These blatant violations against the Hague Convention on the Civil Aspects of Child Abduction from the part of Greece that were also present in Mr. Petroutsas' hearing and the issued Court Decision are listed below:

a. An Order by the Court under the Hague Convention for Child Abduction should only determine which the habitual residence of the child was at the time of abduction. The Greek Court did not at any time mention or determine the habitual residence of the child as required by the Convention. Instead the Greek Court made essentially a custody determination and did not discuss the merits of the Hague application for the child's return to the United States.

b. The grounds on which the Court Decision was based were only and unilaterally Ms. Asvesta's claims that Court acknowledged them as fact without any supporting evidence. The Judge did not take into account any testimony provided by Mr. Rallis or by Mr. Petroutsas' witness to disprove

4

Ms. Asvesta's claims. Ms. Asvesta's and her witnesses claims were full of falsified statements that could easily have been disproven by the evidence we had provided to the Court, but the Judge did not record that any evidence was presented to counter Ms. Asvesta's claims.

c. Ms. Asvesta's claims included allegations of neglect and abuse and also that Mr. Petroutsas was not exercising custody at the time she took the child to Greece.    Ms. Asvesta did not provide any evidence or abuse or mistreatment.    Mr. Petroutsas provided evidence to show that they were living as a family in California at the time Ms. Asvesta took the child to Greece and refused to return, but this was not entered into the Court record.

d. The Judge erroneously held that since Mr. Petroutsas had given written permission for Ms. Asvesta to travel to Greece there was no abduction. The Judge did not consider that Ms. Asvesta's refusal to return to the United States was also considered abduction under the terms of the Hague Convention on the Civil Aspects of Child Abduction.

3. The Greek Public as the legal representative of Mr Petroutsas absolutely irresponsibly and due to a heavy negligence of its services lost the time limit for the exercise of the remedy of the Appeal against the said Court Order, namely thirty (30) days after the service of the said court Decision to the competent clerks of the Greek Public.

4. The Greek Public filed a Cassation application with the Supreme Court of Greece dated 19th of December 2006 and it was designated a Hearing on

5

the 19th of November 2007, to examine only the legal issues that are regarded as mistakes from our part.

Petroutsas' part filed an individual Intervention in favour of the Greek Public and against the respondent Asvestas with the Supreme Court of Greece in order to have the right of presenting his legal position and to reinforce the legal argumentation during the Hearing.

The Hearing has been postponed for the 18th of February 2008 due to the illness of the competent Reporter, but in the meantime it had been issued the Reporter's opinion on the specific subject matter dated 8th of November 2007, that has in general terms as follows:

The Reporter holds that the Cassation and our Intervention should be accepted on the grounds that the First Instance Court judged on the basis only of the likelihood of the facts and not on the basis of the full evidence of them, due to the fact that the Hearing was governed by the Injunctive measures procedure, but this only for reasons of urgency and not for reasons of evidence .

The First Instance Court of Piraeus Decision grounded its justification to the evaluation of the evidential material sufficing itself to the likelihood and not to the full evidence, which is considered by the Reporter to be a legal mistake of the Decision of the First Instance Court of Pireaus and that Decision should be quashed definitely and to be reexamined on the grounds of full evidence by the Single Member First Instance Court of Pireaus

6

composed by another Judge.

The Hearing to be judged undoubtfully should restitute the legal order and

should permit to Petroutsas part to prove its submissions. It will be

undoubtfully proved by entering in the essence that the habitual residence

of the child as defined by the Hague Convention is in the USA.

The correct and by the Law evaluation of the evidences should prove that
George Petroutsas did not actually give any permission to his wife to
move to Greece with the child; i.e. authorized a "vacation" - "rights of
access" as opposed to the "rights of custody".
It appears that the Greek court confused Petroutsa's rights of custody with
Despina's rights of access.  Pursuant to Hague Convention rights of
access only granted her the right to take the child for a "limited period of
time". The recitation of the evidence is contradictory to the conclusions
in the order.
Since the Greek court admitted USA as the habitual residence, Article 13
required to find that Despina proved by "clear and convincing evidence"
that there was a grave risk of physical or psychological harm to THE
CHILD to return him - not Despina. The Court was silent whether it
found that, but it's to the petitioner the burden and the burden is "clear
and convincing" - essentially, the equivalent of criminal burden. Being
deprived of his mother's presence by being returned to his country of
habitual residence is not a "grave risk of ... psychological harm" as
required by the Hague.
She had "visitation" - and at one point joint custody - through the
California courts. Therefore, the finding of the Greek Court under the
Article 13 exception fails and, therefore, is deficient.
The Court's order states his stay in Greece is not illegal - but it does not
make the required finding as to whether or not the REMOVAL and/or
RETENTION was wrongful under Article 3 of the Hague .

On 9th of December 2005 the Petitioner was granted by the First Instance
Court of Athens a temporary Order assigning the temporary custody of
the child to her.

This Temporary Order was not legally awarded to her as the service of
the telegram noticing the Hearing did not take place at the proper address
of Mr Petroutsas.

7

This Order was not extended by the Greek Judge at the designated Hearing of the injunction dated 9th of January 2006 because there was already in motion the Hague Convention procedure and so, the Greek Ministry of Justice sent a letter to the judge suggesting to him not to extend the Temporary Order, which would be against Art. 14 of the Hague Convention and to stay all the custody proceedings, until there should be a proceeding regarding the Hague convention application by the Greek Courts.

Actually, the Temporary Order for custody was granted to the petitioner **for the first time on the 23rd of April 2007,** when the First Instance Court of Athens under an injunctive measures procedure issued, by virtue of the Decision 3157/2007, an Order of temporary custody in favor of her and granted temporary visitation rights in favor of Mr Petroutsas, taking place in his own home in Greece.

Before the 23rd of April there was, actually, no regulation of the custody either by the Law or by a consent of the parties, despite the allegation in para.8 and para.4 of Mr Paraschos' Affidavits respectively.

The said temporary Order never affected the joint parental care exercised by both parents with regard to the child.

The single Member First Instance Court of Athens in the context of the ordinary procedure pursuant to the Decision 1733/2007 awarded the permanent custody to mother and dismissed her claim to get the exclusive permanent parental care by excluding father, being exercised jointly by

8

both parents, and also regulated the visitation rights of the father.

This Court Decision is to be appealed because the Greek Court ignored the pendency of the case in front of the Santa Cruz Court and its priority regarding the Greek Courts.

Last, but not least, the Petition with the Single Member First Instance Court of Pireaus of the respondent Mr Petroutsas for recognition and enforcement of the Santa Cruz Decision was dismissed, but the Appeal Court of Pireaus has accepted to reexamine the case, provided Mr Petroutsas as petitioner submits to the First Instance Court the Santa Cruz Decision FL 022605 along with the then expected Decision that actually took number 1733/2007, which is to be done shortly.

In conclusion, the Greek Courts paradoxically enough assume the jurisdiction of the whole case, but the issue is not the declaration of the Greek Courts, but the appropriate application of the conflict of Laws rules in a particular case, which is up to your honorable Court to decide.

I hereby certify that I fluently speak, read and write the English language.

I HEREBY CERTIFY UNDER THE PENALTIES OF PERJURY AND UPON PERSONAL KNOWLEDGE OF THE CONTENTS OF THE FOREGOING AFFIDAVIT ARE TRUE AND CORRECT.

9

I hereby authorize a facsimile or scanned copy of my signature affixed hereto to be deemed to have the same force and effect as the original.

Stilianos H. GRIGORIOU, Attorney-at-Law LLM

## AFFIDAVIT OF GREEK ATTORNEY REGARDING
## MARCH 23 2006 HAGUE HEARING

I, Nineta Papadavid, Esquire, hereby depose and say as follows:

1.      I am over the age of eighteen (18). I am competent to be a witness, and I have
personal knowledge of the facts and matters stated in this Affidavit.

2.      I am a lawyer in good standing in Greece.

3.      I am qualified to interpret the laws of Greece.

4.      I was hired to serve as attorney for Mr. George Petroutsas from December 2005 thru
May 2006. Mr. Petroutsas filed his Hague Petition with the U.S. State Department
under the Hague Convention on the Civil Aspects of Child Abduction.

5.      In December 2005, The U.S. State Department Intern sent this petition to the Greek
Central Authority (Ministry of Justice), who then assigned a hearing date of March
23, 2006.

6.      On March 23, 2006, a Single Member Court of Piraeus heard the matter of The
People vs. Despina Asvesta (Judgment No. 5042/2006). At the time of the hearing, I
was Mr. Petroutsas' attorney and was presented to the court as such. I was
instructed that I was not allowed to speak on Mr. Petroutsas' behalf because the
Greek Minister of Justice had appointed a representative (Attorney Legal
Representative N.S.K. Anastasios Ralis) to serve as Mr. Petroutsas' representative at
the hearing. It was explained that as the case under his Hague petition was being
brought before the Greek courts by "The People" and not by Mr. Petroutsas as an
individual, he was not to be allowed individual counsel in this matter. This had not
been explained to myself or Mr. Petroutsas until very close to the Hague hearing.

1



7.    At the time of the hearing I had been Mr. Petroutsas' attorney for four months and had spent many hours preparing for this case but Mr. Rali was only permitted to speak on Mr. Petroutsas' behalf. Mr. Petroutsas was only allowed one witness. Mr. Rali spent no more than 45 minutes meeting with Mr. Petroutsas and his witness before the hearing. Mr. Rali told us he had briefly experienced one Hague bearing for Child Abduction prior to Mr. Petroutsas' case.

8.    At the hearing, a Court Clerk or Court Reporter was not present at any time. Mr. Petroutsas was not allowed to speak at the trial and was represented by Mr. Rali and by one witness allowed to speak on Mr. Petroutsas' behalf according to Greek Law.

9.    During my preparation for Mr. Petroutsas' hearing, I read several reports from the United States Department of State which listed that Greece was non- compliant with the Hague Convention (see attached reports). At the time of Mr. Petroutsas' trial and also when the official decision was handed down, I saw the following:

    a. A hearing under the Hague Convention for Child Abduction should only determine where the habitual residence of the child was at the time of abduction. The Greek Court did not at any time mention or determine the habitual residence of the child as required by the Convention. Instead the Greek Court made a custody determination and did not discuss the merits of the Hague application for the child's return to the United States.

    b. In the Judge's determination, she based her decision of custody on all of Ms. Asvesta's claims and acknowledged them as fact without any supporting evidence. The Judge did not take into account any testimony provided by Mr. Rali or by Mr. Petroutsas' witness to disprove Ms. Asvesta's claims. Ms.

2



Asvesta's and her witnesses claims were full of falsified statements that could easily have been disproven by the evidence we had provided to the Court, but the Judge did not record that any evidence was presented to counter Ms. Asvesta's claims.

c.  Ms. Asvesta's claims included allegations of neglect and abuse and also that Mr. Petroutsas was not exercising custody at the time she took the child to Greece. Ms. Asvesta did not provide any evidence of abuse or mistreatment.  Mr. Petroutsas provided evidence to show that they were living as a family in California at the time Ms. Asvesta took the child to Greece and refused to return, but this was not entered into the Court record.

d.  The Judge ———— determined that since Mr. Petroutsas had given written permission for Ms. Asvesta to travel to Greece there was no abduction.  The Judge did not consider that Ms. Asvesta's refusal to return to the United States was also considered abduction under the terms of the Hague Convention on the Civil Aspects of Child Abduction.

10.  After the hearing on March 23, 2006, the Judge provided a decision based on handwritten notes according to Greek Law. In August of 2006, over five months after the hearing in Greece, the Judge's official decision was recorded, by then the time for appeal of Mr. Petroutsas' case had elapsed. Mr. Petroutsas had protested to the Central Authority of the United States and has been granted a new opportunity to appeal this decision.

11.  I hereby certify that I fluently speak, read and write the English language.

3



I HEREBY CERTIFY UNDER THE PENALTIES OF PERJURY AND UPON

PERSONAL KNOWLEDGE OF THE CONTENTS OF THE FOREGOING AFFIDAVIT ARE

TRUE AND CORRECT.

Athens the 11th December 2007

Nineta Papadavid, Esquire

4